AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

__WESTERN__ DISTRICT OF __PENNSYLVANIA__

UNITED STATES OF AMERICA

V.

STEVEN HOLMES

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 07-115m

**UNDER SEAL**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __March 17, 2007__ in __Allegheny__ county, in the __Western__ District of __Pennsylvania__ defendant(s) did, (Track Statutory Language of Offense)

knowingly possess a firearm as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1), and on March 23, 2007, did knowingly, intentionally and unlawfully possess with intent to distribute and distribute 5 grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) and 841(b)(1)(B)(iii)__.

I further state that I am a(n) __ATF Special Agent__ and that this complaint is based on the following facts:

See attachment.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_Signature of Complainant_

Sworn to before me and subscribed in my presence,

__23 March, 2007__ at __Pittsburgh, Pennsylvania__
Date                                                                                City and State

AMY REYNOLDS HAY, U.S. Magistrate Judge
Name and Title of Judicial Officer                    Signature of Judicial Officer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Magistrate No. 07-115m
[Under Seal]

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jeffrey Haggerty, being duly sworn, depose and state the following:

1. Your affiant is employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE) and have been so employed for approximately 18 years. Your affiant is presently assigned to the BATFE Pittsburgh Field Office, Firearms Trafficking Group, and in that capacity has participated in numerous criminal investigations relating to the violation of federal firearm laws. BATFE is a federal law enforcement agency charged with the enforcement of the federal statues relating to firearms under Title 18, United States Code, Chapter 44, including violations of Title 18, United States Code, Section 922(g)(1), which states, in part, that it "shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." The information contained within this affidavit was obtained by me through my personal participation in the investigation of this case, and from

discussions with other Special Agents and Task Force Officers of the BATFE, as well as other law enforcement personnel who have participated in this investigation, and from a review of documentary information.

2.   This affidavit is submitted in support of a criminal complaint and arrest warrant for Steven HOLMES.  For the reasons set forth below, your affiant has probable cause to believe that on or about March 17, 2007, Steven HOLMES did knowingly possess in and affecting interstate commerce, firearms, namely, a Hi-Point carbine, model 40HPC/B, .40 caliber, serial number H10615 and a Hi-Point carbine, model 9HPC/P, 9mm caliber, serial number E01040, in violation of Title 18, United States Code, Section 922(g)(1).  In addition, on or about March 23, 2007, he possessed with the intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii).

3.   On or about March 15, 2007, an investigation was initiated by your affiant and BATFE Task Force Officer (TFO) Trooper Patrick Nied, upon receipt of complaints from Bob's Army Navy, a Federal Firearms Licensee (FFL) operating in Clearfield County, Pennsylvania.  According to information provided by employees of this FFL, they received a series of telephone calls

starting on or about this same date from two separate individuals inquiring about purchasing numerous SKS "assault type" rifles, as well as bullet proof vests. Store employees informed investigators that the store's caller ID captured the name "Lance Miller," and the telephone number (814) 603-0395 during each of these calls that they believed were being made by a both a black and white male. Store employees informed your affiants that on or about March 14, 2007, a white male, a white female and back male visited their store and were captured on their store video. Based on a store employee's conversation with the unidentified white male about purchasing multiple SKS rifles, store personnel reported that the white male confirmed he was one of the individuals who had been calling and that he wanted to purchase multiple firearms for family and friends.

    4.   On or about March 16, 2007, a digital copy of the surveillance footage of the three subjects was forwarded via email to your affiant. Trooper Nied forwarded a copy of this surveillance tape attached to an email memo, which outlined the suspicious activity at this FFL, to Pennsylvania State Police operating in the locality of this FFL. Trooper Nied was then contacted by Corporal Joseph DiPietro of the Pennsylvania State Police, Punxsutawney Barracks. Corporal DiPietro informed investigators that all three subjects in the video were well-known to local law enforcement. Corporal DiPietro identified the white

female as Tessa Hartless, the white male as John Shenk, and the black male as Steven HOLMES, aka "Shy." Your affiants were informed that Hartless has a long history of drug use, that Shenk is a suspected drug user and that HOLMES is a felon and a suspected drug dealer operating in their locality.

5. Based on the identifiers provided by PSP, your affiants completed criminal history queries and determined that Steven HOLMES, black male, date of birth 04/08/1972, social security number 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, had numerous past arrests and, in 1990, had been incarcerated in a state penitentiary on a sentence of two to seven year for a conviction for the crime of Intimidation Of Witnesses/Victims and related offenses. This sentence was based an arrest by the Philadelphia Police Department.

6. On or about March 20, 2007, your affiant and TFO Trooper Nied interviewed Tessa Hartless. Hartless admitted that she and her boyfriend, John Shenk, are crack cocaine users and that a black male she knows as "Steven" Last Name Unknown (LNU), aka "Shy," is a current source of their cocaine. Hartless also informed your affiants that she was present at Bob's Amy Navy store recently and that she is aware that "Shy" was soliciting John Shenk to purchase firearms for "Shy" to trade in Pittsburgh. Hartless informed your affiants that she had overheard "Shy" state that he was going to remove the serial numbers on the firearms so they could not be traced back to Shenk. Hartless said she was aware

that Shenk had purchased two firearms for "Shy" from an unknown FFL in Clearfield County within the past week.

7. On March 21, 2007, your affiant and Trooper Nied interviewed John Shenk. After being informed of his *Miranda* rights, Shenk waived his *Miranda* rights and provided a recorded confession regarding his "straw purchase" of the aforementioned Hi-Point carbines, from Guns and Shooting Supplies, an FFL located at 125 Flegal Road, Clearfield, Pennsylvania for a black male he knew as "Steven" LNU, aka "Shy." Shenk admitted he was a crack cocaine addict and that "Shy" is his current source for crack cocaine. Shenk stated that "Shy" told him he was a felon and had been in jail in the past. Shenk said "Shy" had solicited him to purchase firearms for him in exchange for crack cocaine. Shenk said that on March 17, 2007, "Shy" accompanied him to the above firearm dealer and provided him with the funds (U.S. Currency) to purchase the two aforementioned Hi-Point carbines. Shenk stated that "Shy" waited outside in Shenk's truck while he (Shenk) purchased the two Hi-Point carbines. Shenk said he telephoned "Shy," via cellular telephone, while Shenk was inside the FFL. While on the cellular telephone, "Shy" directed Shenk as to which firearms to purchase. Shenk said that on the day after this purchase, he transferred these firearm to "Shy" at "Shy"'s residence in Dubois, Pennsylvania, where he lives with a female named Amy Stojek. Shenk stated that "Shy" gave him several grams

of crack cocaine as compensation for purchasing the firearms. Shenk said that several days after the firearms transfer, he (Shenk) became concerned and attempted to purchase the firearms back from "Shy," but "Shy" refused. In addition, Shenk said that within the past week, "Shy" asked him (Shenk) to drive him to Pittsburgh, Pennsylvania so "Shy" could purchase crack cocaine. Shenk stated that he agreed and drove "Shy" to an unknown location near downtown Pittsburgh were "Shy" acquired cocaine. Shenk stated that "Shy" provided him with crack cocaine as compensation for the transportation to Pittsburgh. Shenk was shown a Pennsylvania driver's license photo of Steven E HOLMES, DOB 04/08/1972, operator number 25-475-826, which Shenk confirmed as being the individual he knows as "Shy." Shenk stated that he was also aware that HOLMES uses other crack cocaine users from the DuBois area to transport him on a regular basis to the Pittsburgh area in order to acquire illegal narcotics.

8. On March 22, 2007, your affiant was contacted by John Shenk. Shenk advised that he had just had a telephone conversation with Steven HOLMES, and that HOLMES informed Shenk that he (HOLMES) was going to be traveling to Pittsburgh later this same date to acquire crack cocaine. Shenk further informed your affiant that HOLMES offered to acquire crack cocaine for Shenk, at the lower Pittsburgh price, if Shenk provided HOLMES with funds prior to HOLMES departing for Pittsburgh. Based on this

information, PSP Trooper LITAK of the Pennsylvania State Police, Punxsutawney Barracks, provided Shenk with $300.00 in official funds, the serial numbers of which were recorded. On this same date, at approximately 7:00 pm, Shenk spoke to your affiant by telephone. Shenk informed your affiant that he had provided the official funds to HOLMES and that HOLMES said that he would soon be departing for Pittsburgh. At approximately 8:30 p.m., on March 22, 2007, Shenk spoke to your affiant by telephone and advised that HOLMES had departed DuBois en route to Pittsburgh. Shenk provided a detailed vehicle description, including the license plate number. Shenk said the vehicle being driven belonged to Amy Stojek who would be present with HOLMES and the likely operator of this vehicle. Shenk said HOLMES informed him he (HOLMES) was making this trip for crack cocaine and would be returning this same evening.

9. Based on this information, your affiant, along with other law enforcement agents and officers, initiated a moving surveillance of the previously-identified vehicle occupied by Stojek and HOLMES. Surveillance was conducted as HOLMES and Stojek traveled through Pittsburgh to a residence in Swissvale, Pennsylvania. At that time, Stojek entered this residence, while HOLMES departed in a different vehicle.

10. Surveillance teams remained at the residence whiel HOLMES was gone for approximately thirty minutes. Upon his return

to the residence, HOLMES retrieved an unknown object from the rear of the vehicle he had just driven and briefly entered the residence. Shortly thereafter, HOLMES and Stojek exited the residence, and entered the vehicle that they had driven from DuBois to Pittsburgh. As the vehicle was leaving the Pittsburgh area, a traffic stop was conducted. During the stop, the occupants were removed from the vehicle, and a narcotics K-9 was called to the scene. Prior to the K-9's arrival at the scene, Stojek admitted to your affiant that HOLMES had placed an unknown quantity of crack cocaine inside of her purse. The identified crack cocaine was retrieved by officers from Stojek's purse, and field tested positive for cocaine. The approximate weight of the recovered suspected crack cocaine was thirty-five (35) grams.

11. Your affiant, through research, training and experience is aware that the above described Hi-Point firearms are not manufactured in the state of Pennsylvania, and therefore traveled in interstate and/or foreign commerce subsequent to their manufacture.

WHEREFORE, your affiant avers that there is probable cause to believe that Steven HOLMES, on or about March 17, 2007, who has previously been convicted of a crime punishable by a term of imprisonment exceeding one year did, in the Western District of Pennsylvania, possess firearms; namely, a Hi-Point carbine, model 40HPC/B, .40 caliber, serial number H10615 and a Hi-Point carbine,

model 9HPC/P, 9mm caliber, serial number E01040, on or about March 17, 2007, in violation of Title 18, United States Code, Section 922(g)(1). Your affiant further avers that there is probable cause to believe that Steven HOLMES, on or about March 23, 2007, possessed with the intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base, in the form commonly known as crack, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii).

The above information is true and correct to the best of my knowledge, information, and belief.

_____
Jeffrey Haggerty, Special Agent
United Sates Department of Justice
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to before me
this 23rd day of March, 2007.

_____
Honorable Amy Reynolds Hay
U.S. Magistrate Judge